Municipal Securities Company, formerly Allied Realty and Investment Company v. Commissioner. Tom L. Green v. Commissioner.
Municipal Secs. Co. v. Commissioner
Docket Nos. 112287, 112288.
United States Tax Court
1945 Tax Ct. Memo LEXIS 320; 4 T.C.M. (CCH) 120; T.C.M. (RIA) 45046; January 27, 1945
F. A. Rittenhouse, Esq., 840 First Nat. Bldg., Oklahoma City, Okla., L. Karlton Mosteller, Esq., and F. J. Swingle, C.P.A., for the petitioners. E. G. Sievers, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined deficiencies in income tax, excess profits tax, *321 personal holding company surtax and penalty against the petitioners as follows: Municipal Securities Company, Docket No. 112287: Personal
Holding
Income
Excess
Company
Year
Tax
Profits Tax
Surtax
Penalty
1936
$ 9,152.71
$3,016.22
$4,637.22
$1,159.31
1937
18,256.56
5,412.89
1938
1,720.03
Tom L. Green, Docket No. 112288: Income
Year
Tax
1936
$ 500.75
1937
2,268.15
The issues presented by the pleadings in the case of Municipal Securities Company are the correctness of the respondent's action: (1) in determining that the petitioner was taxable as a corporation for the years 1936, 1937 and 1938; (2) in disallowing for each of the years 1936, 1937 and 1938, the portion of the deduction taken as compensation for officers in excess of $6,000; (3) in disallowing in 1936, 1937 and 1938, portions of the deductions taken as bad debts, bad notes or losses; (4) in disallowing in 1936, 1937 and 1938, portions of the deductions taken for legal and accounting expenses; (5) in failing to find that in the computation of undistributed net income subject to surtax on undistributed profits for 1936 and 1937, the *322 petitioner was entitled to certain credits, as representing income set aside or used for the reduction of indebtedness pursuant to written contract; (6) in determining that the petitioner was a personal holding company for 1936 and that it was liable for a penalty for failure to file a personal holding company tax return for that year; (7) in disallowing a deduction of $300 taken by the petitioner for 1937 as a contribution; and (8) in increasing taxable income for 1936 by the amount of $263.77, as representing coal royalty received but not reported by the petitioner. At the hearing the petitioner abandoned issue (7), and the respondent conceded error as to issue (8). The issues presented in the case of Tom L. Green are the correctness of the respondent's action: (1) in increasing Green's 1936 taxable income from dividends by $4,248.78, representing certain payments made in that year by Municipal Securities Company in his behalf and that of Green Construction Company, a corporation with which he was connected; (2) in disallowing $600 of the earned income credit of $1,034.50 taken by Green for 1936; (3) in increasing his 1937 taxable income from dividends by $2,386, representing *323 certain payments made in that year by Municipal Securities Company in his behalf; (4) in increasing his taxable income for 1937 by $14,455.71, as representing the canceled portion of his indebtedness; and (5) in failing to include in his 1936 and 1937 taxable income from dividends the amounts of $750 and $53,174.62, respectively, as representing payments made in his behalf by Municipal Securities Company. Municipal Securities Company Issue (1) - Taxability of petitioner as a corporation Findings of Fact Municipal Securities Company was organized under a declaration of trust dated July 28, 1920, with its principal place of business in Oklahoma City, Oklahoma. From October 2, 1934, to June 1, 1938, it bore the name of Allied Realty & Investment Company. Until about 1931 or 1932, the petitioner filed a consolidated income tax return with certain unnamed organizations. About 1932 it proposed to file its return of income as a partnership, but the local collector's office held that it should file as a corporation. From that time and throughout the taxable years here involved, it filed corporate returns with the Collector for the District of Oklahoma. The trust instrument authorized *324 the issuance of certificates for 5,000 shares in the capital of the petitioner. Such shares, with a par value of $100 each, were designated common shares and were transferable on the books of the petitioner. By or before July 31, 1931, all of the 5,000 shares had been issued and, so far as disclosed, have continued to be outstanding. Tom L. Green owned 2,503 shares, one of which stood in the name of Mrs. Sadie O. Roach, nee Lewis, the petitioner's bookkeeper, in order to qualify her as a trustee. The remaining shares were owned equally by Green's two children and their mother, Mary E. Green, his former wife. The trust instrument as originally executed provides in Article I that Tom L. Green, Mary E. Green and W. S. Moothart, all of Oklahoma City, should constitute the trustees, unless and until changed as therein provided. At some undisclosed time Moothart ceased to be a trustee and Mrs. Roach succeeded him. On June 1, 1938, the trust instrument was amended to provide for five trustees, and Tom L. Green, Jr., and Vernon E. Cook were added. Some of the purposes of the trust were to carry on an investment, banking or brokerage business and in doing so, to act both as principal or *325 agent; to promote or form any sort of company, corporation or association; to underwrite, subscribe for on deal in securities; to engage in any kind of financial, commercial, mercantile, industrial, manufacturing, mining or other business; to own and deal in real estate; and to do any and all other things incidental to the accomplishment of any or all of the purposes stated. The trustees were authorized to manage the affairs of the enterprise and to do those things necessary for carrying out the purposes for which it was formed. Each trustee was to hold office until death, resignation or removal for prejudical conduct by the other trustees, and vacancies were to be filled by the remaining trustees. The trustees also had the power and authority to make and amend by-laws, rules and regulations for the conduct of the business. They were empowered to designate one of their number with full power to sign deeds and other documents, using the signature "Municipal Securities Company," "By" the individual so chosen. In dealing with the property of the trust and the management of its business, the trustees were not to be held to the usual standard of care required of trustees but only to *326 the standard of an ordinary individual dealing with his own property, and so far as strangers were concerned, a resolution of a majority of the trustees authorizing a particular act was to be conclusive evidence in favor of such stranger that the act was within the power of the trustees. The trustees had the power to declare and pay dividends and the amount and payment thereof was wholly within their discretion. Provision was made for annual meetings of the trustees, at which the certificate-holders might nominate from among themselves candidates for trustee, but the power to elect was in the trustees. Creditors were required to look to the trust for satisfaction of trust obligations and neither the trustees nor the certificate-holders were to be personally liable for trust debts. Provision was made that the ownership of trust shares did not give the holder title in or to trust property. On June 1, 1938, the life of the trust was extended for a period of 20 years from that date, and Tom L. Green was designated as the trustee to execute the various documents for the trust. He was also "empowered to act in all capacities the same as if the matter was handled by all trustees," and *327 it was provided that his acts should "be the acts of and for The Municipal Securities Company as provided by the Articles and Declaration of Trust." For the years 1931 through 1935, the income reported by the petitioner was from rents received from real estate investments, with the exception of a few hundred dollars received in 1931 from oil and gas royalties. For the taxable years involved, the petitioner reported income from the sources and in the amounts indicated below: Oil and gas
1936
1937
1938
royalties
$74,389.95
$ 94,613.21
$42,981.41
Rents
13,485.09
16,317.95
19,653.15
* Other income
61.49
10,065.35
2,958.87
Total
$87,936.53
$120,996.51
$65,593.43
Aside from some improvements made on real estate owned by it; the petitioner never engaged in any construction work. So far as disclosed, the petitioner never engaged in any guaranty or indemnity business. The trustees never held any formal meetings, as such, and amendments made to the trust instrument were effected by Tom L. Green having them prepared and then submitting them to each of the other trustees for signature. Opinion The *328 petitioner has not filed a brief, and its position as to this and other issues is determinable only from the pleadings and position taken at the hearing. From the evidence, it appears that the petitioner, Municipal Securities Company, was organized and operated as a business trust or association, and applying the principles declared in , we find and hold that it was an association taxable as a corporation within the meaning of section 1001 (a) of the Revenue Act of 1936 and section 901 (a) of the Revenue Act of 1938. See and compare ; and . Issue (2) - Compensation of officers Findings of Fact In its income tax returns for 1936 through 1938, the petitioner deducted the following amounts as compensation for services rendered by Tom L. Green, as president, and Mary E. Green, as vice president: 1936
1937
1938
Tom L. Green
$12,000
$ 7,691.77
$17,000
Mary E. Green
5,000
5,000.00
1,200
Total
$17,000
$12,691.77
$18,200
In determining the deficiencies involved *329 herein, the respondent determined that $6,000 constituted reasonable compensation for the services rendered by Tom L. Green in each of the taxable years, and disallowed the portions of the deductions taken therefor in eacess of that amount. He determined that Mary E. Green rendered no services to the petitioner in any of the years, and disallowed the entire deduction taken therefor in each of the said years. At the hearing the petitioner abandoned its claim for deductions with respect to Mary E. Green. The declaration of trust under which the petitioner was created and under which it operates does not contain any provisions respecting the payment of compensation to the trustees, or any of them, and, so far as disclosed, no resolution relative to such payment was ever adopted by the trustees. During the years in controversy, Tom L. Green made withdrawals from the petitioner of such amounts as he considered were necessary for his use and within the limits of what petitioner was reasonably able to bear. Of the withdrawals thus made, the petitioner deducted the amounts set out above as compensation for his services. While he was going to high school, Tom L. Green spent some time working *330 in a lumber business. After finishing high school, in 1905, he attended a business college. From the time he left business college until 1913, he worked in Arkansas, Texas and Oklahoma, obtaining experience in reinforced concrete construction. In 1913 he engaged in the general contracting business, constructing buildings, putting in sidewalks, building roads and installing sewer and sanitary systems, etc. Part of his time he devoted to consulting work, such as preparing and advising as to plans and specifications for construction work. On some occasions in 1936 through 1938, and as an employee of Green Engineering Company, he was paid per diem compensation ranging up to $150 per day for consulting services rendered fire insurance companies in making surveys, estimates of losses and assisting in the adjustment of losses. During the taxable years, Tom L. Green was in charge of all of the petitioner's operations. During these years the petitioner had six rental properties, all acquired prior to 1936. The petitioner acquired a refrigeration plant in 1936, at a cost of $3,891.41, a business building in 1937, at a cost of $18,454.48, and a frame building in 1938, at a cost of $1,657.28. *331 From the time of acquisition until the end of the last of the taxable years here involved, the petitioner continued to own the respective properties. So far as determinable, these three properties were acquired by purchase, and, not by construction. In 1936 the petitioner made additions costing $7,066.97 to its principal rental property, an office building owned by it since 1929. In 1938 the petitioner made additions costing $9,380.64 to the business building acquired in 1937. In addition to looking after the leasing of the petitioner's properties and the collection of rentals and royalties therefrom, Green also looked after the construction of the above-mentioned additions made in the years 1936 and 1938. He also devoted some time to looking after the office building to which additions were made in 1936. That building was occupied by Griffith Theatres, which paid the petitioner a monthly rental of $491.67, or approximately $6,000 a year, for the years involved. During these years, Green devoted about 40 percent of his working time to matters relating to this property. Green was also engaged in other enterprises separate and apart from the activities of the petitioner and devoted a *332 substantial amount of time to the affairs of those enterprises. In 1937 and 1938 he also regularly advised with an employee of Mr. Griffith, of Griffith Theatres, relative to the conduct of Criffith's oil business in Texas. The following is a statement of the gross income, deductions and net income or loss of the petitioner for the indicated years, as reported on its income tax returns for such years: Gross Income
1936
1937
1938
Interest received
$ 38.99
$ 5.41
$ 319.87
Rents
13,485.09
16,317.95
19,653.15
Royalties
74,389.95
94,613.21
42,981.41
Dividends
22.50
743.50
489.00
Capital gain
2,491.44
Contracts
6,825.00
2,150.00
Total Gross Income
$87,936.53
$120,996.51
$65,593.43
Deductions
1936
1937
1938
Compensation of officers
$17,000.00
$ 12,691.77
$18,200.00
Rent on business property
463.50
Repairs
1,768.75
1,340.82
947.35
Salaries and wages
2,170.69
5,164.45
Bad notes
8,711.82
Bad debts
12,335.17
65,431.28
14,198.44
Interest paid
3,066.95
1,105.01
3,266.34
Taxes
1,015.73
1,397.20
7,050.42
Contributions
300.00
Contributions
300.00
Depreciation
3,888.15
4,939.02
5,906.24
Depletion
20,457.24
26,018.63
11,819.89
Other deductions
6,381.09
20,393.22
5,537.59
Total Deductions
$75,088.40
$135,787.64
$72,090.72
Net Income or Loss reported
9,128.63
(14,791.13)
(6,497.29)
*333 A reasonable compensation for the services rendered by Tom L. Green to the petitioner during each of the years 1936 through 1938 was $6,000 per year. Opinion The sole question here is what amount constituted reasonable compensation for the services rendered by Green to the petitioner in each of the taxable years involved. The respondent determined that $6,000 per year constituted reasonable compensation. The petitioner alleges that this was error and that the respondent should have determined that the amounts deducted constituted reasonable compensation for Green's services. While some portions of Green's testimony are to the effect that during 1936 through 1938 he devoted his entire time to the business of petitioner, other portions of his testimony, as well as the testimony of other witnesses, show that the contrary was the case. Although the evidence shows that Green devoted about 40 percent of his time, during these years, to matters relating to the making of additions, in 1936, to petitioner's principal rental property and to its leasing throughout the years, there is nothing to indicate how much of his time was devoted to the other rental properties of the petitioner *334 or to its other affairs. Green testified that in his estimation he saved the petitioner about $40,000 in 1938 on engineering and construction fees in connection with building work done by petitioner in that year. When considered in connection with the fact that the only building work shown to have been done by petitioner in that year was the construction, at a cost of $9,380.64, of additions to a business property, Green's statement appears to be an extreme exaggeration. The fact that, as an employee of Green Engineering Company, per diem compensation up to $150 per day was paid for his services to certain insurance companies in a consulting capacity, is not determinative of the value of his services to the petitioner. The amount of the allowance to petitioner for compensation to him must be related to the needs of petitioner's business and to the services actually rendered, and it does not follow that because he could earn large sums under other circumstances and conditions not shown to have been present in petitioner's business, the petitioner is entitled to the allowance of similarly large sums for the services rendered by him to it. Considering the character of the petitioner's *335 activities and operations during the years involved, the amount and sources of its income and the amount and character of the services shown to have been rendered by Green to the petitioner during such years, we have found as a fact that a reasonable compensation for such services was $6,000 a year for each of the years. Having reached that conclusion, we sustain the respondent as to this issue. Issue (3) - The disallowance of deductions taken for bad debts and for losses Findings of Fact In addition to petitioner, Tom L. Green was interested in or was the owner of four other separate business enterprises. The petitioner was larger and financially stronger than the other enterprises combined. One of these enterprises was the Green Construction Company, an Oklahoma corporation, which had been engaged in the construction business since or before 1929. In connection with its operations, Green, in some instances, had personally joined as the maker of notes given by Green Construction Company. In some instances he took in his own name construction contracts which Green Construction Company was not legally qualified to take and later assigned them to the construction company for completion. *336 Beginning in 1931 and continuing into 1934, numerous suits, totaling approximately two million dollars, were brought against Green Construction Company. One such suit was brought in the first part of 1934, by Victor L. Phillips. He not only joined Green Construction Company and the petitioner as defendants, but apparently included as defendants the other enterprises in which Green was interested. He asked for a receivership of all properties of all of the defendants. Green Construction Company was hopelessly insolvent and all of the properties of all the defendants were not sufficient to pay the claims against it. Such being the circumstances, F. A. Rittenhouse, who had been employed by Green as counsel for the defendants, advised Green that if he desired to save the petitioner, it would be advisable to effect a settlement with the various claimants. Green thereupon negotiated a settlement with Phillips, and proceeded to effect settlements whereever possible with other claimants against Green Construction Company. The settlements were effected in some instances by the giving of notes signed by Green personally. So far as disclosed, the petitioner, Municipal Securities Company, was *337 not the maker or endorser of any of the notes used in effecting the said settlements; at least, it was not maker or endorser of any of the notes evidencing any of the indebtedness involved in this issue. It was hoped that the settlements effected would protect the petitioner from any further actions based on the accounts of Green Construction Company. In some instances, judgments had been obtained against Green Construction Company and Green individually. During the years 1936, 1937 and 1938, the petitioner was not involved as a party to any litigation. During 1936 the petitioner paid a total of $4,248.78 on judgments against Green Construction Company and Tom L. Green and on other indebtedness of Green Construction Company. The judgments were based on notes given to creditors of Green Construction Company and signed either by Green alone or by him and Green Construction Company. Upon making the payments on the said judgments, the petitioner took assignments of the judgments in blank, except as to one judgment in the amount of $1,250, which was assigned to Green individually. When the petitioner made the payments on behalf of Green and the Green Construction Company, totaling $4,248.78, *338 Green Construction Company was insolvent, and it was known that recovery of the payments could not be had from it. In its income tax return for 1936, the petitioner deducted $4,248.78 as a bad debt owing to it by Green Construction Company. In determining the deficiency, the respondent disallowed the deduction, on the ground that it represented the payment by petitioner on notes given and owing by Tom L. Green to creditors of Green Construction Company, and that the said amount constituted a dividend to Green. Also in its return for 1936, the petitioner deducted $8,711.82 on notes of eight individuals, claimed by the petitioner to have become worthless in that year. The respondent disallowed the deduction to the extent of $8,691.82, representing the notes of seven of the eight individuals, on the ground that the petitioner did not own the notes, and further, that they were known to be worthless prior to 1936. On brief, the respondent concedes that the notes of five individuals, totaling $4,295.15, did become worthless in 1936, and that the petitioner had acquired these notes at a total cost of $3,322.69, which amount is deductible by petitioner in 1936 as bad debts. Of the *339 two remaining individuals, one was Ben Colbert, whose notes totaled $2,725; the other was M. Sutley, whose note was for $1,596.67. As to Colbert, there was also an item of $75, advanced to him in 1936. Ben Colbert is a veteran of the Spanish American War. After that war, he was Deputy United States Marshal in Oklahoma, and later an Indian Agent in that state. Three notes for $500, $225 and $2,000 were originally given by Colbert to Tom L. Green sometime prior to April 22, 1930. As collateral for the $500 note, there was an assignment of an undivided one-twelfth interest in 400 acres of land in Kern County, California. As collateral for the $225 note, there was an assignment of a judgment for $3,536.57, obtained by Colbert against the Clara-Barton Sequoyah Foundation. The $2,000 note was secured by collateral consisting of a note for $2,106.66, given by the Clara-Barton Sequoyah Foundation to Colbert, the assignment by Colbert of his interest in a one-twelfth interest in the Charles Sumner Young Estate, of Bakersfield, California, and the assignment to Colbert by the Clara-Barton Sequoyah Foundation of $2,106.66 of funds held by the Securities Trust Company of Bakersfield, California. *340 On April 22, 1930, Green placed the notes in the hands of an attorney for collection. The value of the security for all of the notes was apparently contingent on the outcome of a controversy involving the will of Charles Sumner Young, in which the Clara-Barton Sequoyah Foundation was named beneficiary. On November 3, 1931, Green was informed by his attorney that counsel in California, to whom the matter of collection had been referred, had reported that the will of Young was in violation of the California law relative to the leaving of an estate to a religious institution, that those at the head of the foundation had abandoned its interest to Young's heirs, and that there was nothing that could be done toward collecting anything from or through the foundation. On some date undisclosed, Green Construction Company became the owner of the three Colbert notes, and on June 28, 1933, they were acquired by the petitioner at a cost of.77359 of their face value. It does not appear that any interest was ever paid on the notes or that Colbert had any property from which collection could have been obtained. In 1936 he became unable to work, had no property, and his only source of income was *341 a pension from his war service. In that year the petitioner advanced $75 to Colbert to cover his expenses in making an investigation the character of which is undisclosed and the purpose of which was to see if some means of collection might be found. The effort was fruitless. The three notes of Colbert totaling $2,725, acquired by the petitioner from Green Construction Company in 1933, were worthless prior to 1936. The $75 advanced by petitioner to Colbert in 1936 was a loss when it was expended. The note of M. Sutley for $1,596.67 was also acquired by the petitioner from Green Construction Company on June 28, 1933, at a cost to petitioner of.77359 of its face value. Sutley had been employed by Green Construction Company prior to 1933. Thereafter and into 1936, he worked on a part time basis for an engineering company with which Tom L. Green was connected. From sometime in 1936, the only employment he was able to get was with the Works Progress Administration. He had no property. Throughout 1937 and 1938, and for some time afterwards, Sutley suffered from an illness which required him to go to Norman, Oklahoma, and spend substantial time there for treatment. Prior to 1936 Sutley *342 had been an able employee and had had the ability to earn good wages. Due to illness and by reason of other circumstances shown by the evidence, his prospects of obtaining employment for which he would receive remuneration sufficient to pay the obligation here in question ended in 1936. His note held by the petitioner became worthless in that year. On July 2, 1932, Green Construction Company, by Tom L. Green, and Tom L. Green, as an individual, executed a joint promissory note to the First National Bank & Trust Company of Oklahoma City for $103,000. The due date of the note was August 19, 1932. The note carried no endorsement. It was secured by 2,502 shares of petitioner's certificates of interest, which shares were owned by Tom L. Green. Other collateral not material herein was also deposited. The note was not paid when due, but during the period from 1932 through 1936, it was reduced to $78,800.84. In 1937, the bank pressed Green for further payments on the note, and on June 24, 1937, he caused the petitioner to pay $10,000 to the bank thereon, and on July 28, 1937, caused petitioner to make a second payment of $20,000. When the second payment of $20,000 was made, the bank released *343 to Green the 2,502 shares which he owned in petitioner and which had been pledged as collateral for the note. In 1929 the United States Fidelity & Guaranty Company began furnishing construction bonds for Green Construction Company. Losses were sustained by the guaranty company on the bonds, and after it had taken over and completed a construction job in New Mexico, it informed Green that it would have to be reimbursed for the losses sustained on the bonds furnished for Green Construction Company. About 1932 or 1933, Green personally signed an indemnity bond in favor of the guaranty company covering such losses. In 1933 the Green Construction Company gave its note, endorsed by Tom L. Green, for $59,649.35 to the guaranty company to cover all losses sustained on the bonds furnished for Green Construction Company. The note was secured by a mortgage on two parcels of petitioner's real estate, the said real estate being located on Fifth Street, at its intersection with Key Street, in Oklahoma City. The petitioner was not a party to the note given to the guaranty company. In 1937 Green negotiated a settlement of liability on the said note. The settlement called for payment to the guaranty *344 company of $5,000 in cash, the delivery of $18,000 par value of bonds of two Oklahoma municipalities, and of a new note or notes in the principal amount of $20,000. The petitioner paid the $5,000 in cash called for under the settlement and gave to the guaranty company a bill of sale for the $18,000 of bonds which it owned but which prior to that time were held by the guaranty company as collateral. Notes in the principal amount of $20,000, signed by M. Sutley and his wife, and endorsed by Tom L. Green, were also delivered to the guaranty company, in accordance with the terms of settlement. These notes were secured by a mortgage on some lots owned by the petitioner in the 700 block of West Main Street, in Oklahoma City. The lots had been transferred to Sutley merely as a step in giving the mortgage called for by the settlement agreement. The bonds in the face amount of $18,000, for which the petitioner gave the guaranty company the bill of sale, had cost the petitioner $13,924.62. Upon receipt of the cash, bonds, notes and mortgage, the guaranty company released to petitioner the mortgage held by it on the two parcels of real estate located on Fifth Street, in Oklahoma City. In its *345 income tax return for 1937, the petitioner deducted the $30,000 paid to the First National Bank & Trust Company, the $5,000 in cash paid to the guaranty company, and $20,000 representing the face amount of the mortgage given to the guaranty company as security for the $20,000 in notes delivered in the settlement above described, claiming that the payments and the mortgage represented bad debts and losses deductible in that year. In determining the deficiency for 1937, the respondent disallowed as deductions the amounts so claimed. On some date undisclosed, the petitioner pledged $8,500 of its own bonds as collateral for a loan by the First National Bank & Trust Company to Green Construction Company. During 1938 the bank sold the bonds for $2,550 and credited the proceeds on the note. The bonds in question had been purchased by the petitioner on June 28, 1933, at a total cost of $6,574.75. Also in 1938 the petitioner paid amounts owing by Green Construction Company to three creditors, the total amount being $2,192.79. In the same year the petitioner recovered $233.90 on certain assets belonging to Green Construction Company. In its income tax return for 1938, the petitioner deducted *346 as bad debts $6,574.75 representing the cost of the bonds used by the bank towards satisfaction of the Green Construction Company note, as above set forth, and $1,958.89, representing the amounts paid to the three creditors of Green Construction Company, less recovery of $233.90 from assets of Green Construction Company. The deductions so claimed were disallowed by the respondent in his determination of the deficiency for 1938. Opinion Some of the claimed deductions have been disposed of by concessions of the parties, while as to the Colbert and Sutley items in 1936, the facts are such as to require no discussion. As noted in our findings of fact, the respondent now concedes that the notes of five individuals of the face value of $4,295.11, deducted by the petitioner as bad debts in 1936, became worthless in that year and that their cost to petitioner was $3,322.69. With respect to the Ben Colbert item, we have found that his notes, totaling $2,725, were worthless prior to 1936, and as to those petitioner is entitled to no deduction for that year. However, the $75 advanced to him in 1936 became a loss when advanced and is deductible. The M. Sutley note, in the amount of $1,596.67, *347 became worthless in 1936, and as to that item the deduction claimed is allowed. For the year 1937, the petitioner claimed a deduction as a bad debt of $4,609.17, representing the note of Mary E. Green. At the hearing it abandoned that claim. The respondent now concedes that the notes of Harry F. Green and R. Joe Green, in the amounts of $1,174.80 and $467.50, claimed by the petitioner as bad debt deductions, did become worthless in 1937 and that their cost to petitioner was $1,270.47. He also concedes that petitioner is entitled to a deduction of $2,838.62, representing a loss in 1937 on Kansas real estate sold for taxes. In its petition, petitioner had claimed that the amount of the deductible loss was $3,670.71. At the hearing, the petitioner conceded that it was not entitled to the deduction of $20,000 claimed by it for 1937, which $20,000 represented the face amount of a mortgage given to the United States Fidelity & Guaranty Company to secure certain notes which in turn had been given in partial satisfaction of other notes held by the guaranty company covering liabilities of Tom L. Green and Green Construction Company. The remaining items for which the petitioner claims deductions *348 for the years 1936, 1937 and 1938 are $4,248.78, representing an amount paid by it in 1936 in satisfaction of liabilities of Green Construction Company and Tom L. Green or of Green Construction Company; $30,000, paid by it in 1937 to the First National Bank & Trust Company in part payment of a joint note of Green Construction Company and Tom L. Green; $5,000, paid in 1937 to the United States Fidelity & Guaranty Company on a note of the Green Construction Company, which note was endorsed by Tom L. Green; $13,924.62, representing the cost to petitioner of bonds delivered to the United States Fidelity & Guaranty Company in partial satisfaction of the same note; and $8,533.64, representing payments made in 1938 in satisfaction of liabilities of Green Construction Company. The petitioner alleges that these remaining items were deductible for the years stated either as ordinary and necessary expenses, or as losses not compensated for by insurance, or as bad debts. Rather obviously, the record will not support any claim that the items in question were ordinary and necessary expenses of the petitioner. There is no showing that the transactions giving rise to the liabilities paid were a *349 part of or were in any way connected with the business of the petitioner. With respect to the argument that the items represented losses or bad debts, the answer is not quite so obvious, but when the evidence and the state of the record are considered, the result in so far as their deductibility is concerned is the same. All of the payments were made in satisfaction of liabilities of Green Construction Company or of Green individually, or of both, and as noted, there is nothing in the record on which a claim might properly be based that the payments were a part of or had anything to do with the petitioner's business. In so far as the Green Construction Company is concerned, the only connecting link between it and the petitioner, so far as we are able to determine, was Tom L. Green, the individual. Apparently Green had been conducting a construction business in the corporate form of Green Construction Company. At the same time, he was the owner of 2,502 shares, or half, of the beneficial interests in the petitioner outstanding. It is apparent that all of the payments made in respect of the items in question were made at the instigation of Green personally. But for the presence of Green *350 in the picture, there could be no question that any payments made for or on account of Green Construction Company were worthless and a complete loss when made, since Green Construction Company was hopelessly insolvent and had been for a number of years. It is apparent from the record, however, that the payments made by petitioner, whether made in satisfaction of liabilities of Green Construction Company, in satisfaction of its joint liability with Green, or of Green's liability alone, were made for and at the instigation of Green individually. On the record here, we think it clear that all of such payments were chargeable to him. No other connection between the petitioner and Green Construction Company is shown. Such being the circumstances, we think it matters not, so far as the result here is concerned, whether the payments be treated as a distribution by petitioner of its profits to or for the benefit of Green, as the respondent contends they wre, or whether it be said that the payments resulted in the rise of an indebtedness of Green to petitioner. If the payments were in effect a distribution of petitioner's profits to or on account of a certificate-holder, the statute supplies *351 no basis or authority for their deduction. If, on the other hand, they gave rise to an indebtedness on the part of Tom L. Green to petitioner, the record does not show they were worthless in the years when the payments were made, or in any of the years before us. We do know that Green managed and operated his business affairs in a loose and disorganized manner, with little regard for business and legal forms. We know that his company, the Green Construction Company, was hopelessly insolvent and that he personally was pressed for money from time to time. Beyond that, however, except for the fact that he was shown to be the owner of half of the outstanding interests in the petitioner, the certificates for which were released to him in 1937 by the First National Bank & Trust Company, free and clear of any obligation, we know little, if anything, more about his financial status. While the record does not contain any financial statement or balance sheet of the petitioner, such facts as we do have tend to show that the shares of the petitioner owned by Green were of substantial value. Under these circumstances, the record will not support a conclusion of worthless debt or loss with respect *352 to any of the items under discussion, and as to those items the petitioner's claim for deduction is denied. Issue (4) - Disallowance of portions of the deductions taken for legal and accounting expenses Findings of Fact In its income tax returns for 1936, 1937 and 1938, the petitioner deducted as legal and accounting expenses the following amounts, which were disallowed in part as indicated: Year
Deducted
Disallowed
1936
$2,561.85
$2,000
1937
4,684.32
4,250
1938
1,800.00
1,500
The $2,000 disallowed for 1936 was paid to F. A. Rittenhouse. The payment was made by checks, some of which were drawn payable to him while two were drawn payable to cash. The $4,250 disallowed for 1937 was paid by checks, $250 being paid to Judge Bowles, for legal services rendered in connection with claims against Green Construction Company, and $4,000 being paid to F. A. Rittenhouse. The $1,500 disallowed for 1938 was paid by a check to Rittenhouse. The payments made to Rittenhouse during 1936 through 1938 were for services rendered by him in connection with matters relating to or growing out of the affairs of Green Construction Company and Tom L. Green, including, *353 among others, the First National Bank & Trust Company and United States Fidelity & Guaranty Company items considered in the preceding issue. Opinion The petitioner's position is that the disallowed portions of the deductions, set out in the findings of fact on this issue, were deductible as ordinary and necessary expense. The respondent denies that they are deductible. On the record here, we are unable to say that the payments here were not so closely related to the deductions denied in the issue next preceding as to be chargeable to Green individually. We do know that Rittenhouse represented petitioner when it was made defendant in the Philips suit, but that was in 1934. The respondent is accordingly sustained as to this issue. Issue (5) - Credit on account of income used to reduce indebtedness pursuant to written contract Findings of Fact On October 25, 1932, the petitioner wrote Paramount Famous Lasky Corporation, a tenant of petitioner, instructing it to pay all rentals due from it to petitioner to Finnerty Investment Company until further notice. On February 11, 1933, petitioner wrote Griffith Amusement Company, another tenant, instructing it to like effect. Finnerty *354 Investment Company holds a mortgage which petitioner placed on certain of its Oklahoma City real estate. Under the foregoing instructions, Finnerty Investment Company collected rentals of $9,800.04 during 1936, and $9,410.04 during 1937. Of the rentals so collected in 1936, Finnerty Investment Company applied $3,250 on the principal of the mortgage, $2,554.10 as interest, paid taxes of $880.72, including $18.15 for paving tax, and held $3,115.22 in suspense at the end of 1936 for the payment of taxes. Of the rentals it collected in 1937, it applied $6,687 on the principal of the mortgage, $1,105.01 as interest, and paid taxes of $1,617.04, including $17.03 for paving tax. In its 1936 income tax return, the petitioner deducted, and the respondent allowed, the interest paid of $2,554.10, as shown above, for that year and the taxes paid of $880.72, less paving taxes of $18.15, or $862.57. The amount of $3,250 applied on principal was also allowed by the respondent as an amount used to retire indebtedness incurred prior to January 1, 1934, and was deducted in computing petitioner's adjusted net income subject to personal holding company surtax under section 351 of the Revenue Act of *355 1936, but no amount was allowed by the respondent as a credit for contracts restricting dividend payments, under section 26 (c) (2), in computing petitioner's undistributed net income for the purpose of the surtax on undistributed profits under section 14. In its income tax return for 1937, the petitioner deducted, and the respondent allowed, interest of $1,105.01, as shown above. Petitioner also deducted and was allowed taxes in the amount of $1,397.20, an amount not reconcilable with that of $1,617.04, shown above. No amount was allowed by the respondent as a credit for contracts restricting dividend payments in computing petitioner's undistributed net income for the purpose of the surtax on undistributed profits. Opinion The position of the petitioner on this issue is that it was entitled, under the provisions of section 26 (c) (2) of the Revenue Act of 1936, to credits of $9,800.04 and $9,410.04 for 1936 and 1937, respectively, in the computation of its adjusted net income for the purpose of the surtax on undistributed profits imposed by section 14 of the act. Section 26 (c) (2) of *356 the Revenue Act of 1936 provides: In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax - * * * * *
(c) Contracts Restricting Payment of Dividends. - * * * * *
(2) Disposition of Profits of Taxable Year. - An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936. While the testimony of the petitione's bookkeeper shows that Finnerty Investment Company holds *357 a mortgage on certain of petitioner's real estate, that Company is described as the agent for the Central Life Assurance Society in petitioner's instructions to one of the tenants. Whetheronly one item of indebtedness is involved, or whether there are more, is not shown. Neither is it shown that petitioner ever entered into contract with either the investment company or with the assurance society, or any other party of the character contemplated by section 26 (c) (2), supra. So far as the evidence discloses, the arrangement whereby rentals were paid to the investment company and applied by it as shown in our findings of fact may have been purely an oral arrangement for the mutual convenience of the petitioner and other parties to it, and terminable at will by any party to it. The written notices to the tenants were unilateral instructions to them as to whom they should pay rentals until further notice, and clearly were not contracts. Furthermore, in the computation of its income for tax purposes, the petitioner claimed and has been allowed deductions for tax and interest of substantial portions of the amounts here sought as credits. Nothing contained in section 26 (c) (2), supra, *358 contemplates that such portions are to be allowed again as credits. The respondent's determination on this issue is accordingly sustained. Issue (6) - Taxability of petitioner as a personal holding company and penalty for failure to file a personal holding company tax return Findings of Fact The gross income of the petitioner for 1936, as reported in its return and as determined by respondent, was from the sources and in the amounts shown below: Reported
Determined
Capital Gain
None
* $ 2,311.29
Interest
$ 38.99
38.99
Rent
13,485.09
13,485.09
Royalties
74,389.95
74,389.95
Dividends
22.50
22.50
$87,936.53
$90,247.82
The royalties from which the bulk of petitioner's gross income was received were oil and gas royalties. Of the total gross income as determined by the respondent, the income from interest, royalties and dividends totaling $74,451.44 constituted 82.49 percent. Tom L. Green owned a majority of the shares in the petitioner and the balance was owned equally by Mary E. Green and their two children. The respondent determined that in 1936 the petitioner was taxable *359 as a personal holding company and asserted a penalty of 25 percent of the amount of the deficiency in personal holding company surtax because of the petitioner's failure to file a personal holding company tax return. Opinion The petitioner alleges that the respondent erred in determining that it was taxable as a personal holding company in 1936 and that it was liable for a penalty for failure to file a personal holding company tax return for that year. Section 351 of the Revenue Act of 1936 imposes a surtax on the undistributed adjusted net income of personal holding companies. That section also defines the term personal holding company to mean any corporation, with the exception of surety companies and certain other companies not here material, if at least 80 percent of its gross income for the taxable year is derived from royalties, dividends, interest, and annuities and (except in the case of regular dealers in stock or securities). gains from the sale of stock or securities and at any time during the last half of the taxable year more than 50 percent in value of its outstanding stock *360 is owned, directly or indirectly, by or for not more than five individuals. From the opening statement of counsel for the petitioner, it appears that petitioner's position is that it was a surety company during 1936, and therefore not subject to the tax imposed by section 351, supra. The trust instrument under which the petitioner was created, particularly Article II, paragraphs (h) and (o), probably authorized it to engage in the business of a surety company. However, the petitioner offered no evidence directed to a showing that it was ever engaged in business as a surety company either in 1936 or any other year. Copies of its income tax returns for the years 1931 through 1938 were placed in evidence, and in these it stated that its business was that of real estate and investments. In none of the returns did it represent itself as a surety company and in none of them did it report any income as having been received from the surety business. Accordingly, we conclude that the petitioner was not a surety company during 1936. Since in 1936 more than 80 percent of its gross income was derived from royalties, dividends and interest and its outstanding shares were owned by four individuals, *361 the petitioner came squarely within the statutory definition of a personal holding company. There is no evidence to show that petitioner did file a personal holding company tax return for 1936. Nor was there any evidence submitted to show the cause of its failure to do so. In the light of the foregoing, the respondent is sustained on this issue. Tom L. Green Issue (1) - Respondent's inclusion of $4,248.78 in petitioner's 1936 taxable income as dividends Opinion In determining the taxable income of petitioner, Tom L. Green, for 1936, the respondent included as dividends received the amount of $4,248.78, representing the deduction taken in that year by Municipal Securities Company as a bad debt resulting from the payments made by it in that year in behalf of Green and Green Construction Company, under the circumstances set out in the findings of fact in issue (3) in the case of Municipal Securities Company. Some of the liabilities satisfied were shown as the liabilities of Green and Green Construction Company, some as the liabilities of Green Construction Company and one as a judgment against Green alone. As we stated in our opinion under that issue, it is apparent that all *362 of the payments by Municipal Securities Company were made at the instigation of Green and in effect for him. He was the owner of fifty percent of the beneficial interests in Municipal Securities Company then outstanding. On such state of facts, the respondent has determined that the payments made in satisfaction of the said liabilities were in effect the payment of a dividend to him, and on the record before us, we are unable to say that this determination was in error. We therefore hold for the respondent on this issue. Issue (2) - Disallowance of $600 of the earned income credit taken by petitioner for 1936 Opinion On the basis of a reported salary of $12,000 from Municipal Securities Company in 1936, the petitioner took an earned income credit of $1,034.50 in his income tax return for that year. The respondent determined in the case of Municipal Securities Company that $6,000 constituted a reasonable salary for petitioner and disallowed the excess of $6,000 deducted by that company. In determining the deficiency against the petitioner for 1936, the respondent determined that his earned income was $6,000, his earned net income was $4,345, his entire net income was $14,593.78, *363 and that his earned income credit was 10 percent of his earned net income of $4,345, or $434.50. In the case of Municipal Securities Company, we have sustained the respondent's determination that $6,000 was a reasonable salary for the services rendered by petitioner to it in 1936. There is nothing in the record to show that the petitioner received earned income from any other source during 1936, or that the amount of earned net income determined by the respondent was erroneous. In view of this, and since the petitioner's entire net income for 1936 was in excess of $3,000, the petitioner was entitled to an earned income credit of only 10 percent of his earned net income, or $434.50, as determined by the respondent. Issue (3) - Respondent's inclusion on $2,386 in petitioner's 1937 taxable income as dividends Opinion In determining petitioner's taxable income for 1937, the respondent included $2,386 as dividends received in that year from Municipal Securities Company. The respondent determined that $300 of the amount so included represented the payment by Municipal Securities Company of a pledge for a contribution by Green to the Y.W.C.A. of Oklahoma City. The respondent also allowed *364 the $300 to petitioner as a deduction for a contribution. Municipal Securities Company claimed the $300 as a deduction for 1937, but the amount was disallowed by the respondent in determining its income for that year. At the hearing, Municipal Securities Company abandoned the issue relating to the deductibility of the amount and no evidence was submitted with respect to it. We accordingly sustain the respondent's inclusion of the $300 in the taxable income of petitioner. Respecting the balance of the $2,386, or $2,086, the respondent determined that the $5,000 cash paid by Municipal Securities Company in 1937 to United States Fidelity & Guaranty Company, as set out in the findings of fact in issue (3) in the case of Municipal Securities Company, was paid on indebtedness owing to the guaranty company by Green Construction Company and petitioner, and that of the $5,000 $2,086 was paid on indebtedness owing by petitioner. Since the respondent has determined that the $2,086 was paid on indebtedness owing by petitioner to the guaranty company, and since we are unable to determine that it was not so paid, the respondent's determination as to this item must be sustained. Issue (4) - Increase *365 of petitioner's 1937 taxable income by $14,455.71 on account of concellation of indebtedness owing by petitioner On brief, the respondent concedes error as to this issue. Issue (5) - Respondent's failure to include in petitioner's 1936 and 1937 taxable income the amounts of $750 and $53,174.62, respectively, as dividends Opinion This issue was raised in respondent's amended answer and in an amendment thereto. He alleges that Municipal Securities Company paid $750 to F. A. Rittenhouse in 1936 and $4,000 to him in 1937, and in 1937 also paid $250 to Judge W. M. Bowles, for legal services. The respondent also alleges that the cash payment of $30,000 made in 1937 by Municipal Securities Company to the First National Bank & Trust Company and the payment of $18,924.62 made by it in that same year to the United States Fidelity & Guaranty Company, represented by $5,000 in cash and bonds which had cost it $13,924.62, was a payment made on indebtedness owing by petitioner. He further alleges that he erred in failing to include in the petitioner's taxable income as dividends for the respective years the foregoing amounts paid by Municipal Securities Company in such years. In his reply, *366 the petitioner denied the respondent's allegations. The facts relative to the payments to Rittenhouse and Judge Bowles are set out in the findings of fact in issue (4) in the case of Municipal Securities Company, while the facts relating to the payments made to the bank and the guaranty company are set out in the findings of fact in issue (3) in that case. Since the respondent has the affirmative on this issue, he does not have the benefit of the presumption that would have obtained if, as a part of his determination of deficiency, he had determined that the above-mentioned items constituted income of the petitioner. We have previously indicated in our discussion of issues (3) and (4) in the Municipal Securities Company case that we are unable, on the record here, to say whether the items in question gave rise to debts owing by Green to Municipal Securities Company or should be considered in effect dividends paid by Municipal Securities Company to or for the benefit of Green, one of its certificate-holders. Here, as noted, the burden is on the respondent to prove the facts necessary to support his claim that the said payments were in effect dividends. He has not done so, and *367 his affirmative claim hereunder is denied. As to the cash payment of $5,000 to United States Fidelity & Guaranty Company in 1937, however, attention is called to the fact that $2,086 of that amount was included by respondent as income to Green in his determination of deficiency and, as previously held, the presumption that that amount was income stands. Decisions will be entered under Rule 50. Footnotes
*. Interest, dividends, capital gain, etc.↩
*. From the sale of surface rights to certain land.↩